IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| GARRETT INVESTMENTS, LLC, | ) |
| | ) |
|     Plaintiff/Counterclaim Defendant, | ) |
| | ) |
| vs. | ) CIVIL ACTION NO. 12-0500-KD-N |
| | ) |
| SE PROPERTY HOLDINGS, LLC, | ) |
| | ) |
|     Defendant/Counterclaim Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| JOHN B. FOLEY, IV and | ) |
| LAUREN M. FOLEY, | ) |
| | ) |
|     Counterclaim Defendants. | ) |

**ORDER**

This action is now before the court on the motion for summary judgment filed by counterclaim plaintiff SE Property Holdings, LLC (SEPH), the response in opposition filed by counterclaim defendants Garrett Investments, LLC (Garrett), John B. Foley IV and Lauren M. Foley, and SEPH's reply (docs. 50-52, 55, 56). Upon consideration, and for the reasons set forth herein, the motion for summary judgment is GRANTED.

    I.    Procedural background

In the initial complaint, Garrett brought this action against SEPH to set aside a foreclosure sale and alleging breach of fiduciary duty, unjust enrichment, constructive trust, and fraudulent suppression (doc. 1, Exhibit A). Garrett alleged that during the foreclosure process SEPH withheld from its appraiser certain information relevant to the value of the real property in order to purchase the property at foreclosure for a greatly reduced price. SEPH removed the action to this court and filed its answer (docs. 1, 2). SEPH then filed a motion for leave to

amend its pleadings to assert counterclaims against Garrett and to add John B. Foley IV and Lauren M. Foley (the Foleys), the members of Garrett and the guarantors on Garrett's loan with SEPH, as counterclaim defendants (doc. 19).  Garrett moved for leave to amend its complaint to add the appraiser hired by SEPH (doc. 20) and then moved to dismiss the action (doc. 30).

The court granted Garrett's motion to dismiss without prejudice and since Garrett's action had been dismissed, the court found that Garrett's motion for leave to amend the complaint to add the appraiser was moot (doc. 43).  SEPH's motion was granted, the counterclaim was filed, and the action proceeded on the counterclaim (docs. 43, 44).  SEPH has now filed a motion for summary judgment on the counterclaim.  The motion has been briefed and is ready for decision.

II.  Summary judgment standard

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  If a party asserts "that a fact cannot be or is genuinely disputed", the party must

> (A) cit[e] to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1)(A)(B).

SEPH, as the party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991).  The party seeking summary judgment "always bears the initial responsibility of informing the

district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Clark,* 929 F.2d at 608 quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986).

Once SEPH has satisfied its responsibility, the burden shifts to Garrett and the Foleys, as the non-movants, to show the existence of a genuine issue of material fact. *Id*. "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determination of the truth of the matter. Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 999 (11th Cir. 1992) citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 255, 106 S. Ct. 2505 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-159, 90 S. Ct. 1598, 1608-1609 (1970). However, "[a] moving party is entitled to summary judgment if the nonmoving party has 'failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.'" *In re Walker*, 48 F. 3d 1161, 1163 (11th Cir. 1995) quoting *Celotex Corp.*, 477 U.S. at 323, 106 S. Ct. at 2552.

Overall, the court must "resolve all issues of material fact in favor of the [non-movant], and then determine the legal question of whether the [movant] is entitled to judgment as a matter of law under that version of the facts." *McDowell v. Brown*, 392 F.3d 1283, 1288 (11th Cir. 2004) citing *Durruthy v. Pastor*, 351 F.3d 1080, 1084 (11th Cir. 2003).

However, the mere existence of any factual dispute will not automatically necessitate denial of a motion for summary judgment; rather, only factual disputes that are material preclude entry of summary judgment. *Lofton v. Secretary of Dept. of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004). "An issue of fact is material if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case. It is genuine if

the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 807 (11th Cir. 2010) (citation omitted). Also, "what is considered to be 'facts' at the summary judgment stage may not turn out to be the actual facts if the case goes to trial, but those are the facts at this stage of the proceeding for summary judgment purposes." *Cottrell v. Caldwell*, 85 F.3d 1480, 1486 (11th Cir. 1996).

III.  Findings of Fact[1]

In October 2009, Vision Bank renewed a loan to Garrett in the principal amount of $1,299,675.00. (Doc. 52-1, Exhibit A, Affidavit of Deborah Ard, ¶ 5).  SEPH became the successor-in-interest to Vision Bank pursuant to a merger occurring in February 2012. (*Id.*, ¶ 2) The loan, the mortgage securing the loan, and the continuing guaranties guaranteeing payment of the loan, were transferred to SEPH as part of the merger process and SEPH is the current lawful holder of the mortgage and payee of the continuing guaranties (*Id.*, ¶ 2, 4).

As security for the loan, Garrett granted SEPH a mortgage, as amended, on real property located in Baldwin County, Alabama, described as follows:

> Lot 1, Unit 1 of Prochazka Subdivision, as per map or plat thereof recorded in the Office of the Judge of Probate of Baldwin County, Alabama, on Slide 2188-B.
>
> Lot 2, Unit 1 of Prochazka Subdivision, as per map or plat thereof recorded in the Office of the Judge of Probate of Baldwin County, Alabama, on Slide 2188-B.
>
> Lot 3, Unit 1 of Prochazka Subdivision, as per map or plat thereof recorded in the Office of the Judge of Probate of Baldwin County, Alabama, on Slide 2188-B.

---

[1] Garrett and the Foleys do not dispute SEPH's factual allegations to the extent that the allegations are not conclusions of law. (Doc. 55, p. 2, n. 1)

[2] The court has diversity jurisdiction because the Foleys are citizens of Alabama, the members of Garrett are citizens of Alabama and that SEPH is an Ohio corporation with its principal place of business in Ohio (Doc. 44, counterclaim, ¶3-6; Doc. 46, 47, Answers).  The amount in controversy exceeds the jurisdictional prerequisite.  Garrett seeks to recover property sold at foreclosure for $225,000.

[3] "(1) [T]he nature and value of the subject matter of the employment; (2) the learning,

4

(Doc. 52-2, Exhibit A-1, Real Estate Mortgage dated May 31, 2006; Doc. 52-3, Exhibit A-2, Amendment to Mortgage and Security Agreement dated October 29, 2008)

In Paragraph 18, captioned "Expenses; Advances on Covenants; Attorneys' Fees; Collection Costs", the mortgage obligates Garrett to "pay all costs and expenses incurred by [SEPH] in collecting, enforcing or protecting [SEPH's] rights and remedies under this [mortgage]." (Doc. 52-2, at 5, ¶ 18)  The mortgage further states that "[t]his amount may include, but is not limited to, attorneys' fees, court costs, and other legal expenses" and also provides that "[t]his [mortgage] shall remain in effect until released". (*Id.*)

To induce SEPH to make the loan to Garrett, the Foleys executed unlimited continuing guaranties in favor of SEPH. (Doc. 52-4, Exhibit A-3; Doc. 52-5, Exhibit A-4) They "unconditionally guarantee[d] the prompt and full payment and performance and promise[d] to pay all of [Garrett's] present and future, joint and/or several, direct and indirect, absolute and contingent, express and implied indebtedness, liabilities, obligations and covenants" to SEPH, "including but not limited to, attorney's fees and other costs incurred by" SEPH "to collect the indebtedness and/or to protect, maintain, or operate any collateral given a security for the indebtedness, or preserve the priority of Lender's lien thereon or security interest therein" in connection with the loan to Garrett. (*Id*. ¶ 2; Docs. 44, 46 and 47, at ¶¶ 9- 10, counterclaim and answers to counterclaim).

In October 2010, Garrett defaulted under the terms of the loan by failing to make payment when due. (Doc. 52-1, Exhibit A)  The loan matured on December 29, 2010 without payment by Garrett or the Foleys. (Doc. 52-1, Exhibit A; Doc. 44, counterclaim, at ¶ 15; Docs. 46 and 47, answers to counterclaim at ¶ 15)  SEPH filed suit against Garrett and the Foleys and obtained a final judgment against all defendants on March 6, 2012. (Doc. 52-1, Exhibit A; Doc.

52-6, Exhibit A-5, copy of final judgment in *SE Property Holdings, LLC v. Garrett Investments, LLC,* Civil Action No. 11-00169-CB-B)  Thereafter, in April 2012, SEPH foreclosed on the Property.  SEPH was the sole bidder at the foreclosure and purchased the real property for $225,000.00 (Doc. 52-1, Exhibit A; Doc. 44, counterclaim; Docs. 46 and 47 at ¶¶ 16, 19, answers to counterclaim; Doc. 52-7, Exhibit A-6, foreclosure deed).

In July 2012, Garrett filed the present action against SEPH seeking, inter alia, to set aside the foreclosure.  SEPH removed the action to this court (Doc. 1, notice of removal; Doc. 1-1, Exhibit A, complaint).  Garrett's motion to remand was denied (Doc. 40).  SEPH sought leave to amend its answer to assert a counterclaim against Garrett and to add the Foleys as counterclaim defendants (Doc. 20).  The motion was granted and SEPH filed its counterclaim (Docs. 43, 44).  Garrett filed an answer and the Foleys filed a joint answer (Docs. 46 and 47).

As of April 25, 2013, SEPH had incurred $71,378.89 in costs and fees defending against Garrett's claim, plus $275.00 for Charles Fleming's time to review the file and provide expert testimony. (Doc. 52-8, Affidavit of Ashley S. Fincher, Exhibit B; Doc. 52-9, Exhibit B-1, Invoices).  Fleming, a member of the law firm of Fleming and Chavers, LLP, has opined: (a) the number of hours billed since the inception of this action were reasonably and necessarily expended in the performance of the work required in this case; (b) SEPH's attorneys performed with a high level of skill; and (c) and expenses reflected on the billing statements were reasonable expenditures in this case and appear to be necessarily incurred, comparable to those charged by similar firms for performing similar work. (Doc. 52-10, Affidavit of Charles J. Fleming, Exhibit C).

IV. <u>Analysis</u>

a. <u>Applicable law</u>

As an initial consideration, the court must decide what law governs the contract-based

claims for attorney's fees and costs in this diversity action.[2]  "[A] federal court in a diversity case is required to apply the laws, including principles of conflict of laws, of the state in which the federal court sits." *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1139 (11th Cir. 2005) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co*., 313 U.S. 487, 496 (1941)). Alabama courts follow the traditional conflict-of-law principle of *lex loci contractus*. *Lifestar Response of Ala., Inc. v. Admiral Ins. Co.,* 17 So. 3d 200, 213 (Ala. 2009).  Therefore, in Alabama, contract claims are governed by the laws of the state where the contract was made unless the contracting parties chose a particular state's laws to govern their agreement. *E.g., Cherry, Bekaert & Holland v. Brown*, 582 So. 2d 502, 506 (Ala. 1991).

The continuing guaranties signed by the Foleys contain a choice of law provision which states that "[t]his Guaranty shall be governed by the laws of the state indicated in Lender's address." (Doc. 52-4, p. 2; Doc. 52-5, p.2)  The lender, Vision Bank, the successor to SEPH, had an address in Foley, Alabama. (*Id*.)  The mortgage provides that it will be "governed by the laws of the jurisdiction in which Lender is located, except to the extent otherwise required by the laws of the jurisdiction where the Property is located." (Doc. 52-2, p. 6)  Both Vision Bank and the property are located in the Baldwin County, Alabama.  Thus, the laws of the state of Alabama apply to this action.

     b. SEPH's claim for attorneys' fees and costs

SEPH argues that it is entitled to summary judgment on its counterclaims for costs and attorneys' fees for defending this action to set aside the foreclosure because the mortgage remains a valid and enforceable contract and because SEPH's claim is within the scope of the fee-shifting provision in the mortgage.  SEPH also argues that the continuing guaranties are valid

---

[2] The court has diversity jurisdiction because the Foleys are citizens of Alabama, the members of Garrett are citizens of Alabama and that SEPH is an Ohio corporation with its principal place of business in Ohio (Doc. 44, counterclaim, ¶3-6; Doc. 46, 47, Answers).  The amount in controversy exceeds the jurisdictional prerequisite.  Garrett seeks to recover property sold at foreclosure for $225,000.

and enforceable contracts that obligate the Foleys to pay Garrett's indebtedness, liabilities, and obligations. SEPH argues that by challenging its execution of its rights to accelerate and foreclose and challenging the validity of the foreclosure, Garrett continued the viability of the mortgage as controlling the rights of the parties and forced SEPH to incur additional attorneys' fees and costs.

Garrett and the Foleys argue that this action is beyond the scope of the mortgage's contractual attorneys' fees and costs provision. In support, they argue that the mortgage provided SEPH with two rights and remedies in the event of default, acceleration of the debt and foreclosure, and that the mortgage binds Garrett to pay only the costs, expenses and attorneys' fees incurred in enforcing or protecting these rights. They argue that since SEPH has exercised these rights and remedies, it has no remaining rights or remedies under the mortgage to enforce or protect, and hence, no right to attorneys' fees and costs in this action.

Under Alabama law, "[a] mortgagee ... may recover the attorney fees incurred in the enforcement of the mortgage where the mortgage contractually imposes a duty on the mortgagor to pay those fees." *Austin Apparel, Inc. v. Bank of Prattville*, 872 So. 2d 158, 166 (Ala. Civ. App. 2003). "Alabama follows the American rule, whereby attorney fees may be recovered if they are provided for by statute or by contract...." *Jones v. Regions Bank*, 25 So.3d 427, 441 (Ala. 2009) (citations omitted). The mortgage at issue imposes a contractual duty on Garrett "to pay all costs and expenses incurred by" SEPH, including attorneys' fees and costs expended for "enforcing or protecting" SEPH's rights and remedies in the mortgage. (Doc. 52-2, .p 5, ¶ 18) Thus the court must decide whether defending Garrett's action to set aside the foreclosure comes within the ambit of the provision. In that regard, under Alabama law, "an action to set aside the [foreclosure] sale after it has occurred" is considered a "direct attack" upon the foreclosure. *Campbell v. Bank of America, N.A.*, - - - So. 3d - - - , 2012 WL 2362615, *2 (Ala. Civ. App. June 22, 2012) (slip copy) (citing *Beal Bank, SSB v. Schilleci*, 896 So. 2d 395 (Ala. 2004)). Thus, under Alabama law, Garrett's action against SEPH is a direct attack upon the foreclosure

that challenges SEPH's contractual right to foreclose and remedy of foreclosure and required SEPH to defend the exercise of its rights and remedies under the mortgage.

In *Hunt v. NationsCredit Financial Services Corp.*, 902 So. 2d 75, 82-83 (Ala. Civ. App. 2004), the appellate court addressed the appeal of an action for wrongful foreclosure. The appellate court affirmed the trial court's award of attorney fees to NationsCredit because it "proved its entitlement to the fees based on the terms of the promissory note that Hunt signed." *Id*. at 82. The borrower Hunt executed a promissory note wherein Hunt "promised to pay 'all costs of collection or securing or attempting to collect or secure this note, including a reasonable attorney's fee'" *Id*. The appellate court found that a "mortgagee is entitled to attorney fees for defending an action challenging the terms of a promissory note or a mortgage." *Id*. at 82 (citing *Taylor v. Jones*, 290 Ala. 268, 276 So.2d 130, 133 (1973)); *see also Johnson v. U.S. Mortgage Co.*, 991 F. Supp. 1302, 1307 (M.D. Ala. 1997) (under Alabama law, "the mortgagee could still recover fees for defending against the mortgagor's declaratory action under the terms of the note, which provided for a reasonable attorney's fee in connection with the collection or securing of the note"). Also, even if this action were not considered a direct attack upon the foreclosure, in *Mortensen v. Mortgage Electronic Registration Systems, Inc.*, 2011 WL 1675269 (S.D. Ala. May 3, 2011), the district court explained that "Alabama law does not restrict the fees recoverable under contractual fee-shifting provisions to those that a lender incurs in pursuit of direct claims to enforce mortgage and note obligations." *Id*. at *3. Therefore, based upon the foregoing, the court finds that as a matter of law SEPH is entitled to recover its attorneys' fees and costs for defending, i.e., "enforcing and protecting" its rights and remedies under the mortgage in this action.

As to the continuing guaranties, the Foleys unconditionally guaranteed and promised to pay all of Garrett's liabilities and obligations under the mortgage in the event of Garrett's default, including its obligation to pay attorneys' fees and costs. The Foleys also waived their right to notice of the default. *See Sharer v. Bend Millwork Systems, Inc.*, 600 So.2d 223, 225–226

9

(Ala.1992) (setting forth the elements for recovery against a continuing guaranty agreement) (Doc. 52-4, Exhibit A-3 ¶ 5; Doc. 52-5, Exhibit A-4, ¶ 5). Since the court has found Garrett obligated to pay SEPH's attorneys fees and costs, summary judgment is due to be granted in favor of SEPH and against the Foleys as to SEPH's counterclaim. *Ex parte Kaschak*, 681 So. 2d 197, 201 (Ala. 1996) ("Like a surety, a guarantor is liable only in the event and to the extent that the principal is liable.").

    c. <u>Reasonable attorneys fees</u>

SEPH seeks an award of $71,653.89 in attorneys' fees and expenses, plus $275.00 for Charles Fleming's time to review the file and provide his expert opinion as to the reasonableness of the fees and expenses. Although the fee-shifting provision in the mortgage does not specifically provide for an award of reasonable attorneys' fees and costs, "Alabama law reads into every agreement allowing for the recovery of attorney's fees a reasonableness limitation[,]"as a matter of public policy. *Willow Lake Residential Ass'n, Inc. v. Juliano*, 80 So.3d 226, 241 (Ala. Civ. App. 2010) Generally, the determination of reasonable attorneys' fees begins with a determination of the reasonable hourly rate multiplied by the hours reasonably expended." *Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2008); *Norman v. Housing Authority of City of Montgomery,* 836 F.2d 1292, 1303 (11th Cir.1988). When making this "lodestar" determination, the court may consider the twelve factors[3] identified in *Pharmacia Corp. v. McGowan*, 915 So.2d 549, 552–53 (Ala. 2004) (quoting *Van Schaack v. AmSouth Bank, N.A.*, 530 So.2d 740, 749 (Ala.1988)); *see also Bivins*, 548 F.3d at 1350 (addressing the twelve

---

[3] "(1) [T]he nature and value of the subject matter of the employment; (2) the learning, skill, and labor requisite to its proper discharge; (3) the time consumed; (4) the professional experience and reputation of the attorney; (5) the weight of his responsibilities; (6) the measure of success achieved; (7) the reasonable expenses incurred; (8) whether a fee is fixed or contingent; (9) the nature and length of a professional relationship; (10) the fee customarily charged in the locality for similar legal services; (11) the likelihood that a particular employment may preclude other employment; and (12) the time limitations imposed by the client or by the circumstances." *Pharmacia Corp.,* 915 So.2d at 55253.

factors[4] from *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–719 (5th Cir.1974)). "The product of these two figures is the lodestar and there is a strong presumption that the lodestar is the reasonable sum the attorneys deserve." *Bivins*, 548 F.3d at 1350 (internal citations and quotation omitted).

    1. Reasonable hourly rate

As the party requesting an award of attorneys' fees, SEPH has the burden of supplying the court with sufficient evidence from which the court can determine the reasonable hourly rate for the attorneys and paralegal. *Am. Civil Liberties Union of Ga. v. Barnes*, 168 F.3d 423, 427 (11th Cir. 1999). Generally, a reasonable hourly rate is "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman*, 836 F.2d at 1299. In that regard, "[s]atisfactory evidence at a minimum is more than the affidavit of the attorney performing the work." *Norman*, 836 F. 2d at 1299, (citation omitted); *Wachovia Bank, Nat. Ass'n v. Motes Const. & Development, Inc.*, 2009 WL 4898355, 3 (S.D. Ala. 2009) (associate's affidavit that did not contain documentation of time spent or information regarding counsel's skill and experience levels was not sufficient). Also, the court is familiar with the prevailing rates in this district and may rely upon its own "knowledge and experience" to form an "independent judgment" as to a reasonable hourly rate. *Loranger v. Stierheim*, 10 F. 3d 776, 781 (11th Cir. 1994) (citing *Norman*, 836 F. 2d at 1303).

    SEPH argues that the hourly rates are reasonable and comparable to the rates charged by

---

[4] "Those factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." *Bivins*, 548 F.3d at 1350 (quoting *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–719 (5th Cir.1974)).

attorneys and paralegals in this legal community. In addition to Fincher's affidavit, SEPH provides the affidavit of Charles Fleming, an attorney with thirty-nine years experience in a broad-ranged civil practice in this district.  (Doc. 52-10, Fleming affidavit).  Based upon his knowledge, training and experience, and review of the files and billing statements, Fleming opines that the hourly rates requested are reasonable and customary in this district for attorneys of similar experience, expertise, skill, and reputation for providing quality legal work with positive results for their clients. (*Id.*)  Fleming also opined that the hourly rate of $110.00 was a reasonable and customary rate for paralegals in the relevant legal community. (*Id*).

SEPH seeks an hourly rate of $250.00 (2012) and $275.00 (2013) for Graham.  SEPH states that Graham, a partner with twenty-two years of legal experience, has been listed in "Alabama Super Lawyers" and "The Best Lawyers in America for his skill and expertise in the profession." (Doc 52-8, Fincher affidavit).  Garrett and the Foleys argue that the hourly rate should not exceed $250.00 per hour based on Graham's years of experience and that $275.00 per hour is unreasonable. (Doc. 55).   The court finds that SEPH has met its burden to support the reasonableness of the hourly rate of $250.00 but not as to the hourly rate of $275.00. Upon consideration of the factors and the court's own knowledge and experience, the court finds that Graham's hourly rate of $250.00 is reasonable in this action. *SE Property Holdings, LLC v. 145, LLC*, 2012 WL 6681784, *4 (S.D. Ala. Dec. 21, 2012) (awarding $250.00 per hour for Graham in 2012); *SE Property Holdings, LLC v. Sweet Creams, LLC*, 2012 WL 3257806, *4 (S.D. Ala. Aug. 8, 2012) (same).

SEPH seeks an hourly rate $250.00 for Ashley Swink Fincher.  SEPH states that Fincher, an attorney with eleven years experience, regularly litigates for financial institutions and has been named as a "Rising Star" in "Alabama Super Lawyers" for her skill and expertise. (Doc 52-8, Fincher affidavit).  Garrett and the Foleys argue that the hourly rate is excessive given Fincher's years of experience and that the rate should be reduced.  Upon consideration of the factors and the court's own knowledge and experience, the court finds that an hourly rate of

$225.00 is reasonable in this action and that SEPH has not met its burden to establish the reasonableness of a higher hourly rate for Fincher. *SE Property Holdings, LLC v. 145, LLC*, 2012 WL 6681784, *4 (S.D. Ala. Dec. 21, 2012) (awarding $225.00 per hour for Fincher); *SE Property Holdings, LLC v. Sweet Creams, LLC*, 2012 WL 3257806, *4 (S.D. Ala. Aug. 8, 2012) (same).

SEPH seeks an hourly rate of $175.00 and $190.00 for Bradley Sanders, an associate with more than ten years experience including two years as a clerk for the Eleventh Circuit. (Doc 52-8, Fincher affidavit). Garrett and the Foleys do not object to these hourly rates. Upon consideration of the factors and the court's own knowledge and experience, the court finds that Sanders' hourly rates are reasonable for an attorney of his experience and skill and that SEPH has met its burden to establish the reasonableness of these hourly rates. *See Vision Bank v. Glynn,* 2012 WL 685281, *5 (S.D. Ala. Mar. 2, 2012) (awarding $220.00 per hour for an attorney with twelve years experience); *Decorative Components Inc. v. ICON Computing Solutions, Inc.*, 2012 WL 5398800, *5-6 (S.D. Ala. Nov. 2, 2012) (finding that $200.00 per hour was reasonable for an attorney with seven years experience and awarding $230.00 per hour for an attorney with eight years experience); *Branch Banking and Trust Co. v. Imagine CBQ, LLC,* 2012 WL 1987830, *2 (S.D. Ala. June 4, 2012) (awarding $210.00 per hour for special counsel with eight years experience); *Wells Fargo Bank, N.A. v. Williamson*, 2011 WL 382799, *4 (S.D. Ala. Feb. 3, 2011) (awarding $225.00 per hour for a partner with ten years of experience); *Regions Bank v. Stewart,* 2010 WL 4666349, *5 (S.D. Ala. Nov. 8, 2010) (finding Sanders' hourly rate of $175.00 was reasonable).

SEPH seeks an hourly rate of $175.00 and $190.00 for Robert Matthews, an associate with six years experience who "regularly conducts real property foreclosures". (Doc 52-8, Fincher affidavit)  Garrett and the Foleys argue that Matthews' rate should not exceed $150.00 because courts in this district have awarded $150.00 as a reasonable hourly rate for attorneys with a few years of experience. Upon consideration of the factors and the court's own

knowledge and experience, the court finds that the hourly rates of $175.00 and $190.00 are reasonable and that SEPH has met its burden to establish the reasonableness of these rates. *See Gulf Coast Asphalt Company, LLC v. Chevron, U.S.A., Inc.*, 2011 WL 612737 (S.D. Ala. Feb.11, 2011) (finding that $200.00 per hour is a reasonable hourly rate for an attorney with seven years experience as a law firm associate); *See Decorative Components Inc.*, 2012 WL 5398800, at *5-6 (finding that $200.00 per hour was reasonable for an attorney with seven years experience).

SEPH seeks an hourly rate of $180.00 and $185.00 for Meaghan Hill, an associate with more than one year of experience focused primarily in banking law. (Doc 52-8, Fincher affidavit). Garrett and the Foleys argue that $150.00 is a reasonable hourly rate for an associate with approximately one year of experience. The court finds that SEPH has not met its burden as to the hourly rate for Hill. Upon consideration of the factors and the court's own knowledge and experience, the court finds that an hourly rate of $150.00 is reasonable for an associate with one to two years of professional experience even though Hill has focused on banking law. *See SE Property Holdings, LLC v. Green*, 2013 WL 790902, *5 (S.D. Ala. Mar. 1, 2013) (awarding $150.00 for Hill, as a junior associate with approximately one year of professional experience); *See, e.g., Denny Mfg. Co. v. Drops & Props, Inc.*, 2011 WL 2180358, *3–5 (S.D. Ala. June 1, 2011) (finding $150.00 per hour to be a reasonable rate for a second-year associate who was Order of the Coif, served on the Law Review of his law school, and clerked for an Eleventh Circuit judge); *see, e.g., Adams v. Austal, U.S.A., L.L.C.*, 2010 WL 2496396, at *6, (S.D. Ala. June 16, 2010) (finding $150.00 as reasonable for associates with a few years experience).

SEPH seeks $110.00 per hour for work performed by paralegal Rachel DeHora who has seven years experience. (Doc. 52-8, Fincher affidavit)  Garrett and the Foleys argue that her rate should not exceed $75.00 per hour, the established paralegal rate in this district. SEPH states that DeHora has seven years experience as a paralegal but does not provide any evidence that she brings advanced qualification or expertise to her work that would justify an increase to $110.00 per hour. Therefore, SEPH has not met its burden to establish the higher hourly rate. *See, e.g.,*

*SE Property Holdings, LLC v. Welsh*, 2013 WL 608176, *6 (S.D.Ala. Feb. 19, 2013) (slip copy) (finding that $75.00 per hour is a reasonable rate for paralegal time and that SEPH had not made a "sufficient showing to support a higher rate by establishing, for example, that the paralegal involved in this action possesses unusually advance qualifications or expertise"). Customarily, without evidence of "unusually advanced qualifications or expertise", this Court has awarded $75.00 as a reasonable hourly rate for paralegals. *Ceres Environmental Services, Inc. v. Colonel McCrary Trucking, LLC*, 2011 WL 1883009, *6 (S.D.Ala. May 17, 2011). Therefore, the court finds that $75.00 is a reasonable hourly rate for DeHora's work. *Branch Banking and Trust Co. v. Imagine CBQ, LLC,* 2012 WL 1987830, *3 (S.D. Ala. June 4, 2012) ("this district has customarily awarded $75.00 per hour ... for paralegals in this district performing work traditionally performed by an attorney")

    2. <u>Reasonable hours expended</u>

    As the party requesting an award of attorneys' fees, SEPH has the burden of supplying the court with billing statements or invoices which state with sufficient particularity the nature of the work performed and by whom, in order for the court to assess the reasonableness of the time expended. *Barnes*, 168 F.3d at 427. SEPH argues that the time expended and work performed is reasonable because it had to defend against the complaint, the motion to remand and the motion to dismiss without prejudice, as well as conducting discovery. In addition to Fincher's affidavit, and copies of the billing records, SEPH has provided Fleming's opinion that based upon his knowledge, training and experience, and review of the files and billing statements, the number of hours billed were reasonable and necessary for the work required in this action. (Doc. 52-10). Garrett and the Foleys argue that SEPH's claim for costs and attorneys' fees is unreasonable and should be reduced because there are "numerous attorney and paralegal entries for clerical tasks, excessive billings for intra-office conferences among several different timekeepers, and other various excessive billings." (Doc. 55, p. 15) They also argue that the number of hours is

15

"remarkably high" for this type of action and the small amount of discovery[5] and object to the amount of time billed after Garrett moved to voluntarily dismiss.[6]

The court has reviewed the docket and invoices, considered the opinions of Fincher and Fleming, and weighed all the relevant factors in deciding the reasonableness of the work performed and the time expended. The invoices indicate that Graham and Fincher participated in and oversaw all aspects of the case, that Sanders and Matthews worked primarily on the issue of wrongful foreclosure with Matthews also drafting an initial motion for summary judgment as to Garrett's claims, and that Hill worked primarily on drafting the notice of removal, answer to the complaint, counterclaim, and response to the motion to remand as well as researching the issues surrounding Garrett's allegations regarding the appraisals (the breach of fiduciary duty claim), the report of parties' planning meeting, discovery, and drafting the instant motion for summary judgment on the counterclaim.

In general, the majority of the work performed and time expended was not excessive, redundant, or otherwise unnecessary and was adequately supported by the descriptions in the invoices. However, there are some instances of redundant billing. For example, Matthews and Sanders both researched the issue of wrongful foreclosure, albeit at different times, with Matthews researching the issue in July 2012 and March 2013 and Sanders researching the issue

---

[5] The amount of discovery was not "small". The parties exchanged initial disclosures (docs. 14, 16); a joint motion for protective order was granted (docs. 15, 18); interrogatories, requests for production and requests for admissions were served (doc. 22); two notices of deposition duces tecum to non-parties were filed (docs. 28, 29); plaintiff moved for a protective order to prohibit a deposition (doc. 33); SEPH moved to compel responses to the discovery (doc. 36); Garrett's 30(b)(6) deposition was noticed which resulted in an order granting a motion to compel Garrett to appear (doc. 45); and a second set of interrogatories, requests for production and requests for admissions were served after the counterclaim was filed (doc. 49).

[6] Garrett's voluntary motion for dismissal without prejudice was filed pursuant to Rule 41(a)(2) which provides for dismissal "on terms that the court considers proper". Fed. R. Civ. P. 41(a)(2). SEPH did not unnecessarily incur additional time and expense objecting to dismissal without prejudice or in seeking conditions upon the dismissal in order to prevent undue prejudice to SEPH should Garrett re-file.

in December 2012 and January 2013. (Doc. 52-9, p. 4-6; p. 51-52; p. 35; p. 37) Also, Hill prepared a memorandum regarding the "remedies for foreclosure" and "comparing to memorandum by [Sanders]" (doc. 52-9, p. 44).

The invoices indicate also that both Graham and Fincher invoiced time to review and revise the work performed by Hill. (*See e.g.,* Doc. 52-9, p. 8-13)[7] The invoices also contain time entries for conferences in anticipation of monthly status reports provided to SEPH and for drafting and finalizing the reports, conferencing among counsel for routine matters, redundant billing for Graham, Fincher and Hill to receive and review filed documents,[8] for clerical work invoiced at the paralegal rate,[9] and work that appears to have been performed in the related

---

[7] *See e.g.,* Doc. 52-9, p. 8-13:  Hill – "Prepare draft removal petition . . . correspondence with [Fincher] regarding removal petition…"; Graham - "Review and revise removal petition and attachments";  Graham – "Email to [Hill and Fincher] re comments/suggestions to the removal petition . . .; Hill – "Conference with [Fincher and Graham] to review draft notice of removal . . .;  Graham – "Review and revise removal petition . . .; Hill – "Prepare removal petition exhibits . . . Conference with [Graham] . . ."; Fincher - "Review and revision to SEPH's removal petition …"; Graham – "Review and revise removal petition…"; Hill – "Prepare removal petition . . ."; Hill - "Review notice of removal . . . amend removal. . . receipt and review of notice of removal . . ." ; Graham – Review removal petition  . . ."; Hill – "Conference with AEG to review removal filings . .".;

Doc. 52-9, p. 21:  Hill – "Prepare first draft of opposition to motion to remand . . ."; Swink – "Review and approval of . . . opposition"; Graham – " review and revise the . . . opposition"; Graham – "Review and revise the opposition"; Swink – "Receipt, review and approval of . . . opposition".

[8] For example, Graham invoiced time for receipt and review of the Court's notice of SEPH's corporate disclosure, time for receipt of an email from Fincher regarding the corporate disclosures, and time for assigning this task to Hill.  Hill also invoiced time to prepare, review and file the corporate disclosures and for receipt and review of the notice regarding the magistrate judge's review of the corporate disclosure statement. (Doc. 52-9, p. 12-14).  Spot checking the dockets, the corporate disclosure statement is a two-page document that is substantially identical to the disclosure filed in other actions in this court.

[9] The entries show that paralegal DeHora marked exhibits and electronically filed documents, combined documents into PDF format and bates labeled the documents for the initial disclosures, loaded documents and converted to a software program, and loaded discovery responses into a software program.  This is not work traditionally performed by an attorney. *Allen v. U.S. Steel Corp.*, 665 F.2d 689, 697 (11th Cir.1982) (Paralegal time may be recovered (Continued)

17

action.[10] *See SE Property Holdings, LLC v. Garrett Investments, LLC,* Civil Action No. 11-00169-CB-B (S.D. Ala. 2011).

Upon consideration of the foregoing, and acknowledging the reduced hourly rates for Graham, Fincher, Hill, and DeHora, the court finds that an across the board cut of 10% is appropriate in this action. *See, e.g., SE Property Holdings, LLC v. Green*, 2013 WL 790709 (S.D. Ala. Mar. 1, 2013) (applying an across the board reduction of 15% for clerical tasks performed by attorneys or paralegals, excessive billing for intra-office conferences among five timekeepers on small matters, premature preparation of litigation documents that were not filed, and billings for monthly status reports); *Bivins*, 548 F.3d at 1350 (if unreasonable hours are billed, a court "has two choices: it may conduct an hour-by-hour analysis or it may reduce the requested hours with an across-the-board cut"); *Barnes*, 168 F.3d at 428 ("If fee applicants do not exercise billing judgment, courts are obligated to do it for them, to cut the amount of hours for which payment is sought, pruning out those that are excessive, redundant, or otherwise unnecessary.") (citations omitted).

3. <u>Calculating the lodestar</u>

|  | Hourly rate | Hours | Amount |
|---|---|---|---|
| Graham | $250.00 | 67.30 | $16,825.00 |
| Fincher | $225.00 | 30.60 | $6,885.00 |
| Sanders | $175.00 | 4.50 | $787.50 |

---

for work traditionally performed by an attorney, "[o]therwise, paralegal expenses are separately unrecoverable overhead expenses.").

[10] For example, on October 19, 2012, Graham reviewed and revised the "Certificate of Judgment in favor of SEPH. . . " (Doc. 52-9, p. 26). No certificate of judgment has been issued in this action. In July 2012, there were several time entries regarding the deficiency on the foreclosure that was held in April 2012, the right of redemption, payment at the sale, the post-judgment collection to be conducted, and the certificate of judgment entered and recorded in March 2012 (Doc. 52-9, p. 5, 8). On February 14, 2013, there are time entries regarding four judgments obtained and collection efforts. (Doc. 55, p. 45).

| | | | |
|---|---|---|---|
| (2013) | $190.00 | 11.00 | $2,090.00 |
| Matthews | $175.00 | 3.00 | $525.00 |
| (2013) | $190.00 | 9.90 | $1,881.00 |
| Hill | $150.00 | 216.90 | $32,535.00 |
| DeHora | $75.00 | 4.5 | $337.50 |
| Sub-Total | | 347.70 | $61,866.00 |
| Less 10% | | | $6,186.60 |
| Total attorneys' fees allowed | | | $55,679.40 |

After making the appropriate adjustments to the hourly rates and time expended, the court finds that the lodestar is $55,679.40.

    4. <u>Adjustments to the lodestar and reasonable attorney's fees</u>

The court has reviewed the invoices, the record, the motion for attorneys' fees and objections, and the result obtained in this action and finds that there is no basis for an adjustment to the lodestar. Therefore, the court finds that $55,679.40 is a reasonable attorneys' fee in this action. *Bivins*, 548 F.3d at 1350 (internal citations and quotation omitted) ("[T]here is a strong presumption that the lodestar is the reasonable sum the attorneys deserve.")

    5. <u>Reasonable costs and expenses</u>

In support of the request for expenses, SEPH states that it has incurred $880.89 in expenses and seeks to recover this amount from Garrett and the Foleys. In support, Fleming states that these expenditures are reasonable and comparable to expenses charged by similar firms for performing similar work. (Doc. 52-10). Fincher states that the expenses are reasonable and necessarily incurred in this action. (Doc. 52-8, p. 4).

The invoice shows that a title search and abstract was obtained for Lot 67 of Sandy Creek Farms Phase I in the amount of $200.00. (Doc. 52-9, p. 23). However, Lots 1, 2, and 3 of Prochazka Subdivision is the real property at issue in this action. (Doc. 1-1, Complaint). Thus,

this title search and abstract does not appear related to this action.  This expense is not adequately documented and will not be allowed.

The invoice also shows an expense of $350.00 for a filing fee in October 2012. (Doc. 52-9, p. 27).  However, SEPH does not appear to have filed any pleading in this action in connection with this filing fee nor does the entry on the invoice identify the pleading for which the filing fee was necessary.  This expense is not adequately documented and will not be allowed.

Upon review, the court finds that the remaining costs and expenses for copying, long distance telephone, and United Parcel Service in the amount of $330.89 are adequately documented and approved as reasonable.  The expense incurred in obtaining Fleming's affidavit, $275.00, is also adequately documented and approved as reasonable and necessary in this action.  Accordingly, the court approves expenses in the amount of $605.89.

V. Conclusion

Upon consideration of the foregoing, judgment in the amount of $55,679.40 for attorneys' fees and $605.89 for expenses is due to be entered against Garrett and the Foleys, the counterclaim defendants, for a total of $56,285.29.  Accordingly, SEPH's motion for summary judgment is GRANTED.

**DONE** and **ORDERED** this the 8th day of July 2013.

s / Kristi K. DuBose
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**